UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Warren Picard,
　　　Plaintiff

　　　v.                                      Civil No. 09-cv-271-SM
                                              Opinion No. 2010 DNH 208
Elizabeth Descar and
James O'Mara, Jr.,
　　　Defendants

**O R D E R**

Warren Picard brought suit against the Superintendent of the Hillsborough County Department of Corrections, and a nurse employed by the county, claiming they violated his Eighth Amendment rights, by denying him adequate medical care. Defendants move for summary judgment. Picard objects. For the reasons given below, defendants' motion is granted.

**Summary Judgment Standard**

Summary judgment should be granted when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "The object of summary judgment is to 'pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'" Dávila v. Corporación de P.R. para la Diffusión Pública, 498 F.3d 9, 12 (1st Cir. 2007) (quoting Acosta v. Ames Dep't Stores, Inc., 386

F.3d 5, 7 (1st Cir. 2004)). "Once the moving party avers an absence of evidence to support the non-moving party's case, the non-moving party must offer 'definite, competent evidence to rebut the motion.' " Meuser v. Fed. Express Corp., 564 F.3d 507, 515 (1st Cir. 2009) (citing Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991)). When ruling on a party's motion for summary judgment, a trial court "constru[es] the record in the light most favorable to the nonmovant and resolv[es] all reasonable inferences in [that] party's favor." Meuser, 564 F.3d at 515 (citing Rochester Ford Sales, Inc. v. Ford Motor Co., 287 F.3d 32, 38 (1st Cir. 2002)).

**Background**

Because Picard's objection includes no affidavit or other "definite, competent evidence," Meuser, 564 F.3d at 515, the following facts, drawn from affidavits filed by Denise Ryan and David Dionne, are undisputed and taken as true.

Picard has served time in the Hillsborough County House of Corrections ("Jail") on other occasions in the past. This lawsuit arises from a period of incarceration that began on November 30, 2008. At the outset, Picard refused to allow the Jail's medical staff to complete a medical assessment of his condition. Accordingly, he was placed on quarantine status,

which continued for about five weeks, until January 9, 2009. Elizabeth Descar, a nurse at the Jail, saw Picard on eight different occasions between December 5 and December 14, 2009, presumably for the purpose of completing a medical assessment.

Picard's initial weight was reported as 190 pounds, but given his refusal to cooperate with the medical assessment, it is unclear whether he was actually weighed upon intake or simply reported his weight as 190 pounds. Picard asserts in his complaint that his jail identification badge listed his weight, at intake, as 202 pounds. Jail records disclose that, after a medical examination on February 20, 2009, for an alleged shoulder injury, Picard was placed on restrictions that precluded him from lifting weights or engaging in other similar physical activity. On April 21, Picard requested a weight check. The medical staff reviewed his previously recorded weights,[1] and he was placed on the May list for a follow-up weight check. Picard's Jail medical records indicate that he weighed: 193 pounds on January 16; 184 pounds on February 20; 173 pounds on April 4; and 168 pounds on May 13.

---

[1] As a part of that check, staff members examined records from Picard's previous incarcerations and noted the following weights: 162.5 pounds on September 30, 2005; 182 pounds on November 27, 2006; and 192 pounds on June 3, 2008.

On April 26, 2009, Picard again requested a weight check via an inmate request slip. Descar responded, informing Picard that his weight would be checked on May 1. Picard repeated his request on April 30, and was informed by Descar that he was on the list to be checked in May.

On May 5, 2009, Picard filed an Inmate Grievance Form, stating the following: "This grievance is the lack of attention and lack of care that I receive from the medical dept at H.C.D.O.C. Specifically, my weight loss." (Dionne Aff., at 5.) On May 12, the Jail's Health Services Administrator, Denise Ryan, responded: "You have been seen by the doctor on 1/16/09 & 2/20/09. The doctor reviewed your chart on 4/3/09 and you were weighed by the nurse on 4/4/09. You are on the weight list for a weight check." (Id.) It appears that Picard was released from the Jail on May 17, 2009.

As construed by the magistrate judge, Picard's complaint asserts a claim that Descar denied him adequate medical care for weight loss, and that Superintendent O'Mara knew Picard was receiving inadequate medical care but failed to take corrective action.

**Discussion**

Defendants move for summary judgment on grounds that Picard has not made out a prima facie case, that he has not produced the expert testimony necessary to allow his claims to go forward, and that, in any event, they are entitled to qualified immunity.

"Where a prisoner claims that his Eighth Amendment rights were violated by denial of access to proper medical care, he must prove that the defendants' actions amounted to deliberate indifference to a serious medical need." Braga v. Hodgson, 605 F.3d 58, 61 (1st Cir. 2010) (quoting DesRosiers v. Moran, 949 F.2d 15, 18 (1st Cir. 1991) and Estelle v. Gamble, 429 U.S. 97, 106 (1976)) (internal quotation marks omitted); see also Feeney v. Corr. Med. Servs., 464 F.3d 158, 162 (1st Cir. 2006) (to be unconstitutional, prison medical care "must have been so inadequate as to shock the conscience") (citations omitted).

> Deliberate indifference in this context may be shown by the denial of needed care as punishment and by decisions about medical care made recklessly with "actual knowledge of impending harm, easily preventable." [Feeney, 464 F.3d] at 162 (internal quotation marks omitted).  Deliberate indifference means that "a prison official subjectively 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' " Burrell [v. Hampshire Cnty.], 307 F.3d [1,] 8 [(1st Cir. 2002)] (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).  Therefore, substandard care, malpractice, negligence, inadvertent failure to provide care, and disagreement as to the appropriate course of treatment are all

5

> insufficient to prove a constitutional violation.
> <u>Feeney</u>, 464 F.3d at 161-62.

<u>Ruiz-Rosa v. Rullán</u>, 485 F.3d 150, 156 (1st Cir. 2007) (parallel citations omitted).

Here, on the undisputed factual record, both defendants are entitled to judgment as a matter of law. Descar saw Picard eight times in December of 2008, shortly after he entered the facility. At that time, the medical problem Picard now claims was ignored – substantial weight loss – had not manifested itself. Descar's only other contacts with Picard occurred in April of 2009, when she twice informed him that he was on the May weight-check list, and so would obtain the weight check he requested. Picard's requests to have his weight checked were dated April 26 and 30, and the record demonstrates that he was weighed no later than May 13.

Even construing the record in the light most favorable to Picard, the non-moving party, Descar is entitled to judgment as a matter of law. Rather than acting with deliberate indifference to Picard's medical condition (there is no expert or other evidence in the record suggesting that his weight-loss was of a type or degree that actually constituted a <u>serious</u> medical condition), Descar responded to Picard's requests, provided

exactly what he asked for, i.e., a check of his weight, and medical review of his condition. See Ruiz-Rosa, 485 F.3d at 156 ("[d]eliberate indifference in this context may be shown by the denial of needed care as punishment . . ."). Descar's conduct cannot even be characterized as sub-standard on this record, much less as deliberate indifference to a serious medical need.

Picard's claim against Superintendent O'Mara is equally meritless. The record establishes that Picard filed a single grievance about his weight loss, on May 4, 2009, and that the grievance was resolved, at the highest level, by means of a "superintendent's action" authored and signed by David Dionne, acting in his capacity as Assistant Superintendent. That is, the record establishes that Superintendent O'Mara did not personally act on Picard's grievance, and nothing suggests that O'Mara had any personal knowledge of Picard's physical condition or the medical treatment he received. Thus, O'Mara is entitled to judgment as a matter of law. See id. ("[d]eliberate indifference means that a prison official subjectively must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference") (internal quotation marks omitted). O'Mara could not have been deliberately indifferent to circumstances of which he was unaware, and nothing in this record suggests that he was

aware of Picard's condition (nor, again, that Picard had any serious medical need).

## Conclusion

Defendants' motion for summary judgment (document no. 22) is granted. Picard's motion for a protective order (document no. 28) is denied as moot. The clerk of the court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

December 9, 2010

cc: Warren Picard, pro se
John A. Curran, Esq.
Elizabeth L. Hurley, Esq.